Samuel **TOWERS**, Petitioner-Appellant,

v.

**COMMISSIONER OF INTERNAL REV-
ENUE**, Respondent-Appellee.
And Three Related Cases.

**Nos. 204–207, Dockets 24269–24272.**

United States Court of Appeals
Second Circuit.

Argued May 16, 1957.

Decided Aug. 2, 1957.

234

Albert Averbach, Seneca Falls, N. Y., for petitioner.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz and L. W. Post, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before CLARK, Chief Judge, and SWAN and POPE, Circuit Judges.

SWAN, Circuit Judge.

This petition brings up for review a decision of the Tax Court in a consolidat-

ed proceeding originally involving income taxes of five taxpayers for the years 1944 to 1947.[3] The case was heard by Judge Eugene Black, but due to his subsequent resignation from the Tax Court Judge Fisher wrote the opinion. Motions for rehearing, further hearing, and reconsideration were argued, and denied by him. The case was reviewed by the Tax Court and on certain issues there were dissents.[4] On only one of the nine issues decided did the petitioners prevail, namely, "Issue 3." Their appeal seeks a review of the eight other issues. They also contend that they were deprived of procedural due process.

The latter contention is based on the fact that Judge Fisher, who did not hear the testimony, wrote the opinion, which is lengthy and well reasoned. The appellants concede that ordinarily there is no deprivation of due process when a non-hearing judge writes the opinion and makes findings of fact.[5] The claim is that in this case Judge Fisher "ventured his own opinion that loans were not made as testified to," thus disregarding the record and refusing to "give credence to the witnesses." Whether findings of fact by the Tax Court are supported by substantial evidence is open to challenge in reviewing its decision on the specific issues, but the contention that the petitioners were deprived of procedural due process is utterly without merit.

The Tax Court's opinion makes detailed findings as to each of the eight issues which the petitioners assert were

3. See notes 1 and 2, supra.

4. Judges Kern and Herron dissented, without opinion, on Issue 5. Judge Arundell dissented, without opinion, on Issues 4

and 5. Judge Murdock filed a short dissenting opinion.

5. See Seaside Improvement Co. v. Commissioner of Internal Revenue, 2 Cir., 105 F.2d 990, 992, certiorari denied 308 U.S. 618, 60 S.Ct. 263, 84 L.Ed. 516; Halle v. Commissioner of Internal Revenue, 2 Cir., 175 F.2d 500, 504, certiorari denied 338 U.S. 949, 70 S.Ct. 485, 94 L.Ed. 586; Hamlin's Trust v. Commissioner of Internal Revenue, 10 Cir., 209 F.2d 761, 763–764; Amoroso v. Commissioner of Internal Revenue, 1 Cir., 193 F.2d 583, 586, certiorari denied 343 U.S. 926, 72 S.Ct. 759, 96 L.Ed. 1337.

decided wrongly. Familiarity with its findings will be assumed without detailed repetition of them. The deficiencies resulted both from denial of deductions claimed under section 23 of the 1939 Code of Internal Revenue, 26 U.S.C.A. § 23 as bad debts or losses, and from inclusion of income not reported as such by the taxpayers. The appeal raises mainly questions concerning findings of fact.

■ Issue 1, as stated by the Tax Court, is whether certain unpaid loans made by several of the petitioners to Rumsey Products, Inc., with which they were variously associated as stockholders, employees, officers and directors, were business bad debts arising from a business of promoting, organizing, managing and financing business enterprises, or were non-business bad debts. They were held to be non-business bad debts in accordance with the provisions of § 23 (k) (4). The loans were made in June or July 1947 and became worthless in the latter month when the corporation was adjudicated bankrupt.

In the case of each petitioner it was stipulated:

> "During the years 1936 to 1947, inclusive, petitioner was engaged in a number of promotional business ventures. He made loans, advances and gave other financial assistance to said ventures in varying amounts. He also spent [sic] a great deal of time and effort to [sic] the various enterprises."

It is urged that the Tax Court was bound to accept as true the stipulated facts. But the stipulations were not so specific as to compel a decision in the taxpayers' favor. A reading of Judge Fisher's opinion will show the careful consideration he gave to the stipulations and the evidence, both oral and documentary, in reaching the conclusion that in 1947

when the debts became worthless the petitioners were not engaged in a business to which the ensuing losses were proximately related. The opinion reviews in great detail the promotional activities of the petitioners during the years referred to in the stipulations. As to the loans involved in Issue 1 it stated:

> "We do not think that for the year 1947 petitioners were, in fact, actively engaged in any business of promoting, organizing, managing and financing in so far as their services to Rumsey Mfg. and Rumsey Products are concerned within the intendment of the rule heretofore stated. Hadwen C. Fuller, supra [21 T.C. 407]. Nor do we think that the frequent loans to Rumsey Products in the months of June and July of the year in question represented either a business in and of itself, or a part of a business which consisted of promoting, organizing, managing and financing business enterprises. The loans appear to have been merely accommodation advances made from necessity, because of petitioners' practical interest in the company."

We cannot say these findings of fact are clearly erroneous. The law as discussed by Judge Fisher accords with our own decisions.[6]

■ Issue 2 presents the question whether losses sustained by the petitioners from advances to a "motor pool" created to finance motor purchases of Rumsey Products, were losses incurred in a trade or business or in a transaction entered into for profit, under section 23(e), or were business bad debts under section 23(k) (1) or non-business bad debts under section 23(k) (4). The advances were made early in 1947 and were lost in July 1947 upon the corporation's bankruptcy. They were held to

---

6. See Commissioner of Internal Revenue v. Smith, 2 Cir., 203 F.2d 310, certiorari denied 346 U.S. 816, 74 S.Ct. 27, 98 L.Ed. 343; Hickerson v. Commissioner of Internal Revenue, 2 Cir., 229 F.2d 631; Commissioner of Internal Revenue v. Schaefer, 2 Cir., 240 F.2d 381; Wheeler v. Commissioner of Internal Revenue, 2 Cir., 241 F.2d 883; Putnam v. Commissioner of Internal Revenue, 352 U.S. 82, 77 S.Ct. 175, 1 L.Ed.2d 144.

be non-business bad debts. In so holding the Tax Court found nothing in the record to suggest that the contributors intended to buy the motors for resale to Rumsey Products or any other purchaser. The petitioners contend that this finding is contradicted by the agreement with Rose Towitz which meant that she was to take title to the goods on which the sight drafts were drawn and as agent for the petitioners was to resell them to Rumsey Products. The agreement, however, provided that during the continuance of the arrangement she might request and receive "a lien upon the motors to which you are rendering such service, * * *; or in the alternative you may request and receive title to such motors, * * *" Thus she was to receive title only upon request and there is no evidence that she ever made such a request.

Issue 3 was decided in the taxpayers' favor. The Commissioner has not appealed and no discussion of this issue is required.

■ Issue 4 relates to payments of $5,676.30 each, made by Rumsey Manufacturing in 1945 to Albert Towers, Albert Averbach, David M. Hayman and Theodore C. Bonney. They had not reported this as income because they considered the sums received as repayment of loans. The Tax Court, rejecting the Commissioner's treatment of the distribution as a dividend, held it to be the collection of a donated receivable of which the donor's basis was not shown, and consequently the petitioners' basis must be taken as zero and they were accountable for their respective shares as ordinary income. Neither below nor here was any effort made to prove Balch's basis. They also contend that the court below erred in going beyond the issue joined. Judge Murdock's dissent adopted this view. We are unable to agree with it. If right on any theory, the Commissioner's determination that the payments were income should be sustained by the Tax Court and its affirmance upheld on review.[7]

■ The question presented by Issue 5 is whether the cash distribution made by Rumsey Manufacturing Co. in 1945 in connection with the retirement of its preferred stock was made in partial liquidation or was essentially equivalent to a taxable dividend. We think Judge Fisher's discussion of this question entirely adequate. The evidence of possible corporate contraction was not such as to compel a contrary result. See Kirschenbaum v. Commissioner of Internal Revenue, 2 Cir., 155 F.2d 23, 170 A.L.R. 1389 where, in reliance on Commissioner of Internal Revenue v. Estate of Bedford, 325 U.S. 283, 65 S.Ct. 1157, 89 L.Ed. 1611, we announced our intention to defer to the Tax Court in such cases.

Issue 6 relates to payments by Rumsey Manufacturing Co. in satisfaction of the Barrand and Williams assigned claims. The Tax Court's findings of fact are not clearly erroneous and we are content with its opinion on this issue. Judge Murdock was of opinion that "the remainder of the lump sum payment" should be allocated under the rule of Cohan v. Commissioner, 2 Cir., 39 F.2d 540. But the taxpayers do not suggest what method of allocation would be appropriate nor point to any evidence to be relied upon in attempting to make an allocation.

■ Issue 7 relates to losses claimed by Albert Towers on account of payments made in discharge of his liability as endorser of certain notes. These losses were held to be non-business bad debts for lack of evidence that he was in a trade or business which included as part of its activities the incurring or subsequent payment of these obligations. He argues that his life time business was promoting enterprises but proof is lacking that these particular losses were approximately related to his promotional activities.[8]

7. Helvering v. Gowran, 302 U.S. 238, 246, 58 S.Ct. 154, 82 L.Ed. 224; Hormel v. Helvering, 312 U.S. 552, 558, 61 S.Ct. 719, 85 L.Ed. 1037.

8. See note 6, supra.

In Issue 8 the Tax Court held that sums expended in 1947 in the course of unsuccessful proceedings to reorganize Rumsey Products were not deductible as business bad debts or business losses. The findings of fact are not clearly erroneous and the decision must stand.

Issue 9 presents the question whether petitioners are entitled to net operating carry-backs from 1947 to 1945 and 1946 for losses from transactions decided in Issues 1, 2 and 3. We see no necessity of adding to the opinion below on this issue.

Accordingly the decisions are affirmed, except in the case of Hayman whose appeal was dismissed on stipulation.