**Edmund Thomas GULLEDGE, Sr., and Lucy Coulter Gulledge, Husband and Wife, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 7501.**

United States Court of Appeals
Fourth Circuit.

Argued Oct. 11, 1957.

Decided Nov. 7, 1957.

Wilton H. Wallace, Washington, D. C., and Braxton C. Wallace, Greenwood, S. C. (Henry F. Lerch, Washington, D. C., on brief), for petitioners.

James P. Turner, Attorney, Department of Justice, Washington, D. C. (John N. Stull, Acting Asst. Atty. Gen., Lee A. Jackson and Harry Baum, Attorneys, Department of Justice, Washington, D. C., on brief), for respondent.

Before SOPER, SOBELOFF and HAYNSWORTH, Circuit Judges.

SOPER, Circuit Judge.

The question on this appeal is whether certain loans, which had been made by the taxpayer to a corporation and had become worthless in the years 1951 and 1952, constituted business bad debts deductible in full from gross income under § 23(k) (1) of the Internal Revenue Code, or non-business debts to be treated as losses from the sale or exchange of capital assets held for not more than six months, and therefore deductible in a limited amount under § 23(k) (4).[1]

Edmund T. Gulledge, the taxpayer, and his wife, who is a party only because joint returns were filed, made a deduction for the year 1951 in the sum of $27,500 and a deduction for 1952 in the sum of $18,867.04 for losses on loans made to the Sumter Peanut and Produce Corporation of Sumter, South Carolina, on the theory that the loans amounted to bad business debts; but the Commissioner held that the loans represented non-business debts and allowed as a deduction only $1,000 in 1951 and $1,467.50 in 1952, offsetting a $467.50 capital gain reported for that year. The Tax Court sustained the Commissioner's determinations.

Gulledge was a farmer in Sumter County, South Carolina, who operated 1,500 to 2,000 acres of land, of which 400 acres were planted in peanuts. He had about 32 tenant farmers and about 100 additional families to which he made advances in connection with his farming operations. It is conceded, however, that he was not in the business of promoting or lending moneys to corporations. In 1946, when the transactions began, which ultimately led to the losses under examination, the peanut acreage in Sumter County amounted to 4,000 acres, but the nearest markets for peanuts were located 150 to 200 miles away and the growers in Sumter County were at a disadvantage in getting fair prices for their crops because they were obliged to sell to buyers who traversed the countryside in trucks and bought peanuts for whatever price they could negotiate. Accordingly, the taxpayer and three other persons, two of whom were large growers of peanuts, made inquiry from established peanut companies to ascertain whether it would be a profitable undertaking to set up a marketing and processing plant for peanuts in Sumter County. Upon receiving encouraging reports as to the feasibility of the venture they set up such a plant in Sumter County. In all, they invested $48,000 in the capital stock of the corporation, of which the taxpayer contributed $15,500, and as a result the growers in the county obtained an advance from $25 to $30 per ton on the price of their peanuts; and the investors testified that

---

[1]. Internal Revenue Code, 1939:
 Sec. 23. "Deductions from Gross Income.
 "(k) Bad debts.
 "(1) General rule. Debts which become worthless within the taxable year; or (in the discretion of the Commissioner) a reasonable addition to a reserve for bad debts; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. * * * 

"(4) Non-business debts. In the case of a taxpayer, other than a corporation, if a non-business debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. The term 'non-business debt' means a debt other than a debt evidenced by a security as defined in paragraph (3) and other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business." 26 U.S.C.A. § 23(k) (1, 4).

they considered the business of the corporation as part of their farming operations. The business of the corporation, however, was not successful and the taxpayer advanced various sums as loans to the corporation in the years 1949 to 1952 aggregating the sum of $46,367. Other stockholders also advanced substantial sums. All of this money, however, was lost and finally, in 1952, the corporation was dissolved and its real estate was conveyed to the stockholders.

 In these circumstances we think that the decision of the Tax Court must be affirmed since a proximate relationship between the losses and the business of the taxpayer was not established within the meaning of the statute and the applicable regulations. Section 29.23(k) (6) of Regulations 111 applicable to 1951, and the corresponding section of Regulations 118 applicable to 1952, which are substantially identical, provide that the character of a non-business bad debt is to be determined by the relation which the loss bears to the trade or business of the taxpayer.[2] It is true that the taxpayer and the other stockholders were induced to contribute to the capital of the corporation in the hope that the establishment of a peanut mill in their neighborhood would enable them to secure a better price for their peanuts, and hence it may be said in a broad sense that the business of the farmers and the business of the corporation were related. It does not follow, however, that the business of the corporation was incidental to the business of the taxpayer and that the loss of the money loaned by him to the corporation was incurred in the operation of his farms. The two businesses were separate and distinct. The taxpayer owned the one directly while in the other he had merely the interest of a stockholder. The corporation was not merely a department of the business of his farm. Not only was the corporation a separate business and taxable entity, but it was set up to purchase and process not only the taxpayer's crop but also the peanuts of all the other growers in the locality; and it was formed in the expectation that it would return a profit to its founders. All of these circumstances call for a finding of fact, and it is well established that the trier of fact, in this case the Tax Court, must determine, when a debt due to a taxpayer has become worthless, whether or not the loss was incurred in the course of the taxpayer's trade or business. Undoubtedly there is substantial evidence,[3] in the pending case to support the finding that the corporation's business was not an incident to the business of farming but was an independent enterprise. See Putnam v. Commissioner, 352 U.S. 82, 77 S.Ct. 175, 1 L.Ed.2d 144; Wheeler v. Commissioner, 2 Cir., 241 F.2d 883; Pokress v. Commissioner, 5 Cir., 234 F.2d 146. The decisions on which the taxpayer relies to support his contention, to wit, Tony Martin, 25 T.C. 94; J. T. Dorminey, 26 T.C. 940; Giblin v. Commissioner, 5 Cir., 227 F.2d 692, do not require a different conclusion in view of their differing facts.

Affirmed.

2. "39.23(k) (6)—Nonbusiness bad debts.

"(a) In the case of a taxpayer, other than a corporation, if a nonbusiness bad debt becomes entirely worthless within the taxable year, the loss resulting therefrom shall be treated as a loss from the sale or exchange of a capital asset held for not more than six months. * * *
 * * * * *

"(b) The character of the debt for this purpose is not controlled by the circumstances attending its creation or its subsequent acquisition by the taxpayer or by the use to which the borrowed funds are put by the recipient, but is to be determined rather by the relation which the loss resulting from the debt's becoming worthless bears to the trade or business of the taxpayer. If that relation is a proximate one in the conduct of the trade or business in which the taxpayer is engaged at the time the debt becomes worthless, the debt is not a nonbusiness debt for the purposes of this section.
* * * *"

3. See § 7482, Internal Revenue Code, 26 U.S.C.A. § 7482; Rule 52(a), Rules of Civil Procedure, 28 U.S.C.A.