LEON S. AND DOROTHY A. BLACK, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5946–66. Filed April 23, 1969.

*David R. Frazer*, for the petitioners.
*Edward B. Simpson*, for the respondent.

150

OPINION

The petitioners contend that the $15,031.81 debt became worthless to the extent of $3,693.61 in 1963 and to that extent is deductible under section 166 of the Internal Revenue Code of 1954.[3] Such $3,693.61 represents the difference between the face amount of the $15,031.81 note surrendered by petitioners on July 24, 1963, and the amount accepted in substitution therefor, namely, $5,031.81 in cash and another note for $6,306.39.

---

[3] Sec. 166 provides in part as follows :

(a) GENERAL RULE.—

(1) WHOLLY WORTHLESS DEBTS.—There shall be allowed as a deduction any debt which becomes worthless within the taxable year.

(2) PARTIALLY WORTHLESS DEBTS.—When satisfied that a debt is recoverable only in part, the Secretary or his delegate may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction.

* * * * * * *

(d) NONBUSINESS DEBTS.—

(1) GENERAL RULE.—In the case of a taxpayer other than a corporation—

(A) subsections (a) and (c) shall not apply to any nonbusiness debt; and

(B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months.

(2) NONBUSINESS DEBT DEFINED.—For purposes of paragraph (1), the term "nonbusiness debt" means a debt other than—

(A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer ; or

(B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.

The respondent, on the other hand, contends that the petitioners have failed to establish that the $15,031.81 debt was worthless in whole or in part in 1963, and thus are not entitled to any deduction on account thereof.

Both parties seem to agree that the debt in question was a nonbusiness debt. In any event, we think it is clear that it was such. A nonbusiness debt is defined in section 166(d)(2) as any debt other than one created or acquired in connection with a trade or business of the taxpayer, or a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business. Here the debt arose out of the sale of the Camelback property which the petitioners had purchased with the intention of use as their personal residence. There has been no showing that the debt had any connection whatever with any trade or business of the taxpayers. Indeed, we are not informed as to what business the taxpayers were engaged in, if any.

Section 166(d)(1) provides that in the case of a taxpayer other than a corporation where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered as a loss from the sale or exchange of a capital asset held for not more than 6 months. Furthermore, to be so treated, such a debt must become *entirely* worthless within the taxable year. Section 1.166–5(a) of the Income Tax Regulations provides in part as follows:

> If, in the case of a taxpayer other than a corporation, a nonbusiness debt becomes wholly worthless within the taxable year, the loss resulting therefrom shall be treated as a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. * * * A loss on a nonbusiness debt shall be treated as sustained only if and when the debt has become totally worthless, and no deduction shall be allowed for a nonbusiness debt which is recoverable in part during the taxable year.

Such regulation is in conformity with the purpose of the statute. See H. Rept. No. 2333, 77th Cong., 2d Sess., p. 76, explaining the congressional intent when, in the Revenue Act of 1942, provisions were first enacted distinguishing between business and nonbusiness debts.[4] See *Rollins* v. *Commissioner* (C.A. 4), 276 F. 2d 368, affirming 32 T.C. 604.

Apparently the petitioners do not contend that the debt became worthless in whole but only to the extent of $3,693.61. We think it clear

---

[4] Such committee report contains the following:

"A new provision is added providing for special treatment of nonbusiness debts, applicable in the case of a taxpayer other than a corporation. If such a debt becomes entirely worthless within the taxable year, the loss resulting therefrom is to be considered a loss from the sale or exchange of a capital asset held for not more than 15 months. The provisions of section 23(k)(1), as amended by this section, with respect to a debt which has become partially worthless, do not apply in the case of a nonbusiness debt; and a loss with respect to such a debt will be treated as sustained only if and when the debt has become totally worthless. * * * "

that such debt did not become worthless either in whole or in part. The fact that the petitioners, for reasons satisfactory to themselves, relinquished their claim against the debtor to the extent of $3,693.61 does not of itself establish that the debt was worthless to any extent. See *Raffold Process Corp.* v. *Commissioner*, (C.A. 1) 153 F. 2d 168, affirming a Memorandum Opinion of this Court, and *O'Bryan Bros.* v. *Commissioner*, (C.A. 6) 127 F. 2d 645, affirming 42 B.T.A. 18, certiorari denied 317 U.S. 647. See also sec. 1.166–2(a), Income Tax Regs.[5] The $15,031.81 note was secured by a second mortgage on the Camelback property. When, on July 24, 1963, the petitioners relinquished such note and accepted cash of $5,031.81 and a note for $6,306.39 in substitution therefor, the Camelback property had a value of at least $54,500. The amount of the first mortgage on such property was originally $32,468.19, and there is no evidence to show that it was any greater on July 24, 1963. Thus, it would appear that the value of the property exceeded the first mortgage by at least $22,031.81, which was more than sufficient to cover the indebtedness secured by the second mortgage. The petitioners contend that had they foreclosed they would have had expenses, including property taxes and attorney fees, of some $3,500 to $4,000. Even if so, it would appear that the amount which would be realized upon a foreclosure of the property would be sufficient to meet such expenses and still allow for payment of the $15,031.81 indebtedness.

In view of the foregoing, we hold that the petitioners have not established that the debt became worthless, and we accordingly approve the respondent's determination.

*Decision will be entered for the respondent.*

---

[5] Sec. 1.166–2(a), Income Tax Regs., provides as follows:

(a) *General rule.* In determining whether a debt is worthless in whole or in part the district director will consider all pertinent evidence, including the value of the collateral, if any, securing the debt and the financial condition of the debtor.